| | |
|---|---|
| FREDERICK IVERSON<br>4014 Beechwood Road<br>University Park, MD 20782<br><br>PLAINTIFF<br><br>v.<br><br>HVM IMPORTS, LLC DBA<br>MERCEDES-BENZ OF<br>HUNT VALLEY<br>200 SW 1ST Avenue<br>Fort Lauderdale, FL 33301<br><br><br>MERCEDES-BENZ USA, LLC<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>DEFENDANTS | IN THE CIRCUIT<br>COURT FOR<br><br>PRINCE GEORGES<br>COUNTY<br><br><br>C-16-CV-24-002371<br>Case No.: |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT

Frederick Iverson (hereinafter "Iverson"), by his attorney Mark Rollins, sues HVM Imports, LLC, DBA Mercedes-Benz Of Hunt Valley (hereinafter "Mercedes Dealership") and Mercedes-Benz USA, LLC, (hereinafter "Mercedes-Benz") Defendants, and states as follows:

## COUNT 1
Unfair and Deceptive Trade Practice

1. Plaintiff Iverson is a resident of Prince George's County, Maryland.

2. HVM Imports, LLC, also known as Mercedes Dealership of Hunts Valley, is a Delaware Corporation headquartered in Fort Lauderdale, Florida. This company is authorized to distribute, maintain, and repair Mercedes-Benz vehicles in Maryland, with its main location situated at 9800 York Rd #2, Cockeysville, MD 21030.

3. Mercedes-Benz Group AG, a renowned manufacturer of luxury passenger cars, has its

headquarters in Sandy Springs, Georgia. One of its distributors, Delaware-based corporation Mercedes-Benz USA, LLC, is responsible for bringing these exquisite vehicles to the market.

4. Throughout the relevant time period, the aforementioned circumstances and claims outlined herein demonstrate the joint actions of Defendant HVM Imports, Mercedes Dealership and the representation of Defendant Mercedes-Benz USA LLC, in their dealings with the sale, maintenance, and refurbishment of vehicles produced by Mercedes-Benz Group AG.

5. On the 25th day of December in the year 2020, the plaintiff, Iverson, interacted with the defendant, HVM Imports Mercedes Dealership, in response to the defendant's internet advertisement for the sale of a Mercedes Benz G63 SUV vehicle. The advertisement, which was presented as a bona fide offer, purported to sell the aforementioned vehicle to the plaintiff at the manufacturer's suggested retail price (MSRP) of $174,000. It is worth noting that this offer was accompanied by an expiration date of the 30th day of December in the year 2020.

6. Iverson reached out to Defendant Mercedes Dealership on December 27, 2020, with the intention of purchasing the coveted G63 SUV at the listed price. However, to his disappointment, he was informed that the advertised vehicle was no longer available for purchase.

7. Pursuant to its advertisement on the internet, Defendant Mercedes Dealership procured Iverson's contact information and proceeded to initiate communication with him. Subsequently, a proposal was extended to Iverson for the purchase of a G63 SUV vehicle, with an additional sum of $10,000 beyond the manufacturer's suggested retail price.

8. The Plaintiff brings forth a claim against Defendant Mercedes Dealership for engaging in deceptive and dishonest trade practices, in violation of Title 13 of Maryland's Consumer Protection Act. Specifically, the Defendant advertised a G63 SUV vehicle at the MSRP price,

with the intention of enticing potential customers, yet without the true intent to sell said vehicle at the advertised price. Such actions constitute a deliberate and calculated scheme to deceive and defraud consumers, and thus warrant legal redress.

COUNT 2
Breach of Express Warranty

9. Plaintiff Iverson hereby adopts and incorporates by reference as though set forth herein, the allegations and statements contained in the foregoing paragraphs.

10. On the 30th day of December, in the year 2020, the plaintiff, Iverson, entered into a contractual agreement with the defendant, Mercedes Dealership, for the procurement of a 2021 Mercedes-Benz G63 SUV (hereinafter referred to as the "Vehicle") at the total cost of $176,050, exclusive of additional expenses such as excise tax, dealer fees, license fees, and registration fees.

11. Iverson purchased the vehicle from Defendant Mercedes Dealership on May 19, 2021.

12. Prior to finalizing the purchase of the Vehicle, Iverson and a representative from Defendant Mercedes Dealership meticulously inspected the car for any damage or imperfections. Upon careful examination, they noticed a few blemishes and scratches scattered throughout the paint finish. Promptly, the attentive salesman promptly took the Vehicle to the onsite detailer at Defendant Mercedes Dealership to address the concerns.

13. The sales representative returned with the Vehicle and confidently attested to Iverson that all previously mentioned concerns regarding the paint finish have been rectified, resulting in a faultless presentation of the Vehicle.

14. The Plaintiff alleges that the Defendant Dealership, in an attempt to address the unsightly and defaced sections of the Vehicle's paint finish, caused further harm to said finish

through the negligent and inadequate utilization of a mechanical buffer tool.

15. In the course of the procurement proceedings, the Defendant Dealer lured Iverson into acquiring a multitude of supplementary vehicular amenities and commodities, such as the application of a paint protective substance.

16. Relying on Defendant Mercedes Dealership's representation that the paint protective product was needed to protect the Vehicle's paint finish, Iverson agreed to purchase the paint protective product for the cost $1000.

17. The defendant, Mercedes Dealership, explicitly assured that no harm would be inflicted upon the Vehicle's paint finish during the application of the paint protective product.

18. The defendant's Mercedes dealership, through its on-site detailer, allegedly administered the paint protective product onto the Vehicle prior to its transferal to the plaintiff, Iverson.

19. The Plaintiff, Iverson, asserts that the Defendant, Mercedes Dealership, is liable for damages to the Vehicle's paint finish. It is alleged that during the application of a paint protective product, the Defendant caused harm to the aforementioned finish. As a result, the Plaintiff seeks damages for this purported act of negligence.

20. On or around June 23, 2021, upon inspecting the Vehicle's paint finish in luminous daylight, Iverson discerned the presence of holographic imperfections therein.

21. Holograms, also known as Buffer Trails, or Buffer Swirls are defects in a vehicle's paint finish caused by improper use of a mechanical buffer tool. Hologram defects become apparent as wax or glaze products applied to the Vehicle's paint finish wear away.

22. The defendants, Mercedes Dealership and Mercedes-Benz, are in violation of their express warranty by virtue of their sale of the Vehicle to Iverson..

## COUNT 3
### Breach of Implied Warranty

23. Plaintiff Iverson hereby adopts and incorporates by reference as though set fourth herein, the allegations and statements contained in the foregoing paragraphs.

24. Defendant Mercedes Dealership and Mercedes-Benz sold the Vehicle to Iverson in violation their implied warranty of merchantability.

## COUNT FOUR
### Unfair and Deceptive Trade Practice

25. Plaintiff Iverson hereby adopts and incorporates by reference as though set fourth herein, the allegations and statements contained in the foregoing paragraphs.

26. Defendant's Mercedes Dealership knowingly made false representations to Iverson about the need for the paint protective. Defendant Mercedes Dealership knew that the application of the paint protection product was duplicative and unnecessary, as the Vehicle's manufacturer had already treated the Vehicle's paint finish with a paint protective product.

27. Defendant Mercedes Dealership statements to Iverson regarding to the need for Iverson to purchase the paint protective were knowingly false and made in violation of Title 13 of Maryland's Consumer Protection Act.

## COUNT FIVE
### Negligence

28. Plaintiff Iverson hereby adopts and incorporates by reference as though set fourth herein, the allegations and statements contained in the foregoing paragraphs.

29. On or about June 23, 2021 Iverson took the Vehicle to Defendant Mercedes Dealership and requested that Defendant Mercedes Dealership repair the hologram defects in the Vehicle's paint finish.

30. Defendant Mercedes Dealership agreed to repair the hologram defects and again sent the Vehicle to its' onsite detailer.

31. In attempting to repair the hologram defects, Defendant Mercedes Dealership's onsite detailer utilized a mechanical buffer tool in an improper and shoddy manner causing additional damage to the Vehicle's paint finish.

32. Defendant Dealership's attempt to repair the hologram defects caused further and more extensive hologram damage to the Vehicle's paint finish.

33. At no time has anyone other than Defendant Mercedes Dealership, Mercedes-Benz, or the manufacturer of the Vehicle performed any waxing, or polishing of the Vehicle's paint finish.

34. At no time since May 19, 2021, has anyone other than Defendant Mercedes Dealership performed any waxing, polishing, or application of any paint protective product to the Vehicle's paint finish.

35. At no time has anyone other than Defendant Mercedes Dealership attempted to repair the hologram defects in the Vehicle's paint finish.

36. At no time since the May 19, 2021 purchase of the Vehicle has anyone other than Defendant Mercedes Dealership utilized a mechanical buffer tool on the Vehicle's paint finish.

37. On May 19, 2021, Defendant's Mercedes Dealership's shoddy workmanship caused significant damage to the Vehicle's paint finish.

38. On June 23, 2021, Defendant's Mercedes Dealership's shoddy workmanship caused significant damage to the Vehicle.

## COUNT SIX
Unfair and Deceptive Trade Practice

39. Plaintiff Iverson hereby adopts and incorporates by reference as though set fourth

herein, the allegations and statements contained in the foregoing paragraphs.

40. Plaintiff Iverson pleads in the alternative that the Vehicle's paint finish was defectively applied by the manufacturer, resulting in hologram defects in the paint finish.

41. Plaintiff Iverson pleads in the alternative that prior to May 19, 2021, the Vehicle's paint finish was damaged during the production of the vehicle or at Defendant Mercedes-Benz's Vehicle Preparation Center (VPC), resulting in hologram defects in the Vehicle's paint finish.

42. On or about July 1, 2021, Iverson contacted Defendant Mercedes-Benz regarding the damage to the Vehicle's paint finish. At that time the representative of Defendant Mercedes-Benz informed Iverson that Defendant Mercedes-Benz bore no responsibility for the damage to the Vehicle's paint finish.

43. On or about November 9, 2022 Iverson provided notice to Defendant Mercedes-Benz under Maryland's Automotive Warranty Enforcement Act. Iverson notified Defendant Mercedes-Benz of the defect in the Vehicle's paint finish and Defendant Mercedes Dealership's failure to remedy the defect.

44. Iverson requested that Defendant Mercedes-Benz remedy the problem consistent with Maryland's Automotive Warranty Enforcement Act (Md. Code Ann., Com. Law, §14-1502).

45. On or about November 23, 2022 Iverson spoke with a representative of Defendant Mercedes-Benz who indicated that Defendant Mercedes-Benz bore no responsibility for the damage to the Vehicle's paint finish.

46. On May 19, 2021, a 2021 Mercedes-Benz G63 SUV's in like new and undamaged condition had a market value of $50,000 - $75,000 over the Vehicle's MSRP.

47. Iverson purchased the Vehicle with the intended purpose of reselling the Vehicle for a profit.

48. When Iverson purchased the Vehicle it was covered by Defendant Mercedes-Benz's written warranty covering defects in material or workmanship for 48 months or 50,000 miles.

49. At all times relevant hereto the above-described damage, defects, and repairs to Iverson's Vehicle were within the warranties provided by Defendant Mercedes-Benz and Defendant Mercedes Dealership and within the first fifteen thousand (15,000) miles of the Vehicle's operation.

50. Said defects significantly impair the value of the Vehicle and have not been corrected by Defendant Mercedes-Benz and Defendant Mercedes Dealership in a reasonable number of attempts during the warranty period.

51. In refusing without justification to honor its obligations Defendant Mercedes-Benz acted in bad faith and has violated Iverson's rights under §§14-1502 and 14-504 of the Maryland Commercial Law Code.

WHEREFORE, Plaintiff Iverson demands judgment against Defendant Mercedes-Benz and Defendant Mercedes Dealership for:

1. The repurchase of the vehicle at the full purchase price, including excise tax, dealer fees, license fees, and registration fees, which is the sum of One Hundred and Ninety Thousand Dollars ($190,000);

2. Damages of Seventy Five Thousand Dollars ($75,000);

3. Damages of Seventy Five Thousand Dollars ($75,000) for false representations pertaining to the paint protective treatment.

4. Punitive Damages of One Hundred Thousand Dollars ($100,0000) for false representations pertaining to the paint protective treatment.

5. Damages of Ten Thousand Dollars ($10,000) for the false advertising and

misrepresentations in violation of Title 13 of Maryland's Consumer Protection Act;

6. Punitive damages of One Hundred Thousand Dollars ($100,000) for the false advertising and misrepresentations in violation of Title 13 of Maryland's Consumer Protection Act;

7. Damages of One Hundred Thousand Dollars ($100,000) for Defendant Mercedes-Benz failure to act in good faith;

8. Interest, costs, attorney's fees, and such other and further relief as the Court deems proper.

Respectfully submitted,
ROLLINS AND CHAN

/s/ *Mark Rollins*

Mark Rollins
Maryland CPF [9606050375]
Counsel for Chase Cole
419 7TH Street, NW
Suite 405
Washington, DC 20004
Telephone No. 202-455-5610
Direct No: 202-455-5002
mark@rollinsandchan.com

**Date Filed:** May 17, 2024

### CERTIFICATION OF OUT OF STATE ATTORNEY MD RULE 1-313

I, Mark Rollins, hereby certify that I am licensed to practice law in the State of Maryland.

/s/ *Mark Rollins*

Mark Rollins